**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH DOBBINS, et al.** | : | **CIVIL NO. 11-272** |
| | : | |
| **v.** | : | ***Consolidated with*** |
| | : | |
| **COMPANIA SUD AMERICANA DE VAPORES S.A., et al.** | : | ~~**CIVIL NO. 11-1655**~~ |

FILED
FEB 10 2012
MICHAEL E. KUNZ, Clerk
By______ Dep. Clerk

**ORDER**

On December 28, 2010, Plaintiffs Joseph Dobbins and Jayme Dobbins commenced this personal injury action in Philadelphia Common Pleas Court. *(Doc. No. 1.)* Mr. Dobbins (a longshoreman) alleges he was injured aboard Defendant's vessel, the M/V Ice Ranger. The matter was removed to this Court, and Defendant Hol-Reefer V now moves for summary judgment. *(Doc. No. 45.)* Plaintiffs have filed a Response, and Defendant has filed a Reply. *(Doc. Nos. 47, 48.)* For the reasons that follow, I will deny Defendant's Motion.

## I. BACKGROUND

The facts are largely uncontested. On December 28, 2008, Mr. Dobbins's shoulder was injured when he lost control of a steel escape ladder while attempting to lower it into a hold aboard Defendant's vessel. At the time of his injury, Dobbins was a longshoreman employed by Delaware River Stevedores (DRS). *(Doc. No. 47 at 2, 16.)* The day of the accident, Dobbins and his co-workers boarded the vessel to unload cargo. *(Id. at 2.)* Dobbins used a portable ladder to descend into a hold. *(Id.)* The hold's escape ladder, which is a part of the vessel, could not then be installed because there was cargo in the area where it would have been placed. *(Doc. No. 47-1 at 2.)*

Before the hold was completely emptied of cargo, the longshoremen allegedly called up to crewmembers to ask for a ladder so they could climb out of the hold. *(Doc. No. 47 at 20.)* It is

unclear whether they could have used cell phones or walkie-talkies to contact someone on the main deck. *(Doc. Nos. 45 at 7, ¶ 31; 47 at 20, 22-23, ¶ 31; 47-1 at 4.)* One of Dobbins's co-workers lifted him to the main deck using a forklift, and Dobbins looked around for a minute or longer while he unsuccessfully tried to find a crewmember. *(Doc. Nos. 45 at 8, ¶¶ 35-38; 47 at 24-25, ¶¶ 35-38.)* Dobbins found an escape ladder on the main deck and began to lower it into the hold. Because the ladder was too heavy, he lost control of it after feeling a pain in his shoulder. *(Doc. Nos. 45 at 8-9, ¶¶ 39-43; 47 at 25, ¶¶ 39-43.)*

Plaintiffs allege Dobbins was injured because Defendant knew it should have installed an escape ladder, but in failing to do so, forced the longshoremen to free themselves from the hold. *(Doc. No. 47 at 12.)* They bring claims of negligence.

## II. LEGAL STANDARD

### A. Summary Judgment

Under Rule 56(a), I must grant summary judgment if the moving Party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to set forth specific facts showing the existence of such an issue for trial." Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). To satisfy this burden, the non-moving party must offer a genuine issue of material fact that "exceed[s] the 'mere scintilla' threshold." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Summary judgment must be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . . In such a

situation, there can be 'no genuine issue as to any material fact.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

B. Longshore and Harbor Workers' Compensation Act

Plaintiffs' claims arise under the Longshore and Harbor Workers' Compensation Act. The LHWCA permits a longshoreman to recover damages arising from an injury caused by a vessel's negligence. 33 U.S.C. § 905(b). As at common law, recovery for negligence under the LHWCA requires breach of a duty owed to the plaintiff.

Although the stevedore (a longshoreman's employer) bears most of the burden of protecting longshoremen in the course of their employment, the vessel is not without its own duties. See Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 169 (1981); Howlett v. Birkdale Shipping Co., 512 U.S. 92, 97, 101 (1994). A vessel owes three general duties of care to longshoremen performing cargo operations:

> (1) a turnover duty, requiring it to turn over the ship and its contents in safe working condition, and to warn if they are in a dangerous condition; (2) an active [operations] duty, to exercise due care in protecting longshoremen from hazards in equipment or areas under the active control of the vessel; and (3) a duty to intervene, if the vessel has actual knowledge of a dangerous condition and reason to believe that the stevedore will not remedy it.

Goldsmith v. Swan Reefer A.S., 173 F. App'x 983, 986 (3d Cir. 2006) (citing Scindia, 451 U.S. at 175-79).

Although the vessel has no general duty to supervise or inspect cargo operations, "contract provision, positive law, or custom" may impose on the vessel a duty of "supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations." Scindia, 451 U.S. at 172; see Derr v. Kawasaki Kisen K.K., 835 F.2d 490, 493 (3d Cir. 1987).

## III. ANALYSIS

Defendant argues there is no evidence that it breached any of the three general duties of care it owed to Dobbins. Plaintiffs respond that summary judgment is inappropriate because there is *prima facie* evidence that Defendant breached the active operations and intervention duties, and because underlying facts are disputed.

### A. Active Operations Duty

"[A] vessel may be liable [for breach of the active operations duty] . . . if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." Scindia, 451 U.S. at 167. There is sufficient evidence that Defendant triggered and breached the active operations duty.

#### *1. Triggering*

Plaintiffs have presented evidence that raises an issue of material fact as to whether the shipowner was in charge of the area or instrumentality of Dobbins's accident, and was thus subject to the active operations duty. Davis, 16 F.3d at 540-41. The M/V Ice Ranger's captain, Vitalijs Inapsis, and Michael Billups, a longshoreman supervisor who has worked on the Philadelphia waterfront since 1978, testified that a vessel's crew is responsible for installing escape ladders. *(Doc. No. 45, Exs. F at 8, 16-17; M at 58.)* Plaintiffs' expert witness stated that industry standards required Defendant to have a crewmember on the main deck or at a gangway during cargo operations. *(Doc. No. 47, Ex. C. at 3.)* As I discuss in greater detail in Part C, a jury could thus find that Defendant had a customary duty to install an escape ladder. Accordingly, a question of fact exists as to whether the active operations duty was triggered. Id.

2. *Breach*

The active operations duty is breached if:

> (1) . . . the vessel appreciated, should have appreciated, or with the exercise of reasonable care would have appreciated, the condition; (2) . . . the vessel knew, or should have known, that the condition posed an unreasonable risk of harm to a longshore worker; (3) . . . a longshore worker foreseeably might fail to (i) either discover the condition or apprehend the gravity and probability of harm, or (ii) protect himself or herself against the danger; and (4) . . . the vessel failed to take reasonable precautionary or remedial steps to prevent or eliminate the dangerous condition.

Id. at 541.

a. *Appreciation of the Hazardous Condition*

Dobbins testified that while in the hold, he and his co-workers called up to passing crewmembers to ask them to install the escape ladder. *(Doc. No. 45, Ex. I at 32.)* A jury could thus find that the vessel knew no escape ladder was in place and that the longshoremen were trapped in the hold and would foreseeably seek to free themselves.

b. *Knowledge of Unreasonable Risk to Longshoremen*

Captain Inapsis testified that (1) crewmembers are supposed to install escape ladders aboard a vessel; (2) the M/V Ice Ranger's crew would have prohibited a longshoreman from installing an escape ladder if they had seen him trying to do so; (3) only one officer and one crewmember were assigned to monitor cargo operations; and (4) installing an escape ladder is a two-person job because of the ladder's weight. *(Doc. No. 47 at 41-43.)* A jury could thus find the vessel knew or should have known of an unreasonable risk of harm to Dobbins because, being unable to find a crewmember to help him when one should have been present, he would reasonably seek to free his co-workers from a hold in which they were trapped. See id. A jury could also find that Dobbins, not being a crewmember, was unaware of the risks involved in installing an escape ladder by himself, and thus would foreseeably injure himself while

attempting to do so.

*c. Longshoreman Might Fail to Discover or Prevent the Danger*

As I have explained, Captain Inapsis's testimony would permit a jury to find that Dobbins would have foreseeably sought to free his co-workers from the hold and failed to apprehend the risks involved in installing an escape ladder. See id. Moreover, Plaintiffs present evidence that none of the longshoremen could have contacted their supervisors to have a ladder installed because they were without walkie-talkies or cell phones. *(Id. at 22-23, ¶ 31.)* Accordingly, Plaintiffs have set out sufficient evidence to satisfy the third active operations element.

Defendant argues that it does not bear liability because the dangerous condition that injured Dobbins was obvious. Hill v. Reederei F. Laeisz G.M.B.H., Rostock, 435 F.3d 404, 409 (3d Cir. 2006) (construing Kirsch v. Plovidba, 971 F.2d 1026, 1031, 1033 (3d Cir. 1992)). As I have explained, Plaintiffs have produced sufficient evidence for a jury to conclude that the condition that led to Dobbins's injury was not obvious. In any event, the holding in Hill applies explicitly to the turnover duty, not the active operations duty. See 435 F.3d at 408; Kirsch, 971 F.2d at 1026.

*d. Vessel Failed to Take Reasonable Remedial Steps*

Plaintiffs offer sufficient evidence to make out the fourth active operations element. Davis, 16 F.3d at 541. Dobbins and one of his co-workers testified that the vessel's crew failed to install an escape ladder even though Dobbins's longshoring gang requested one several times while clearing the hold. *(Doc. No. 45, Exs. I at 30-31; K at 23.)*

B. Duty to Intervene

The duty to intervene arises "if the vessel has actual knowledge of a dangerous condition and reason to believe that the stevedore will not remedy it." Goldsmith, 173 F. App'x at 986 (citing Scindia, 451 U.S. at 175-79). "[A] necessary inquiry is whether the pertinent statutes, regulations, or custom place or assume a continuing duty on the vessel to repair defective ship's gear being used by the stevedore in the cargo operation." Scindia, 451 U.S. at 176.

Plaintiffs have set out sufficient evidence for a jury to find that the vessel had actual knowledge of the dangerous condition—leaving longshoremen trapped in a hold in circumstances that would cause them to seek to free themselves. Once again, several crewmembers walked by the hold and failed to install an escape ladder after being asked to do so. *(Id., Exs. I at 30-31; K at 23.)* The evidence could also show the vessel had reason to believe the stevedore would not remedy this condition because (1) if the stevedore were expected to provide a ladder, the longshoremen would not have asked the crewmembers for one; and (2) the crew may have had a customary duty to provide the escape ladder. See id.

C. Customary Duty

"[C]ontract provision, positive law, or custom" may impose on a vessel a duty supplemental to the turnover, active operations, and intervention duties. Scindia, 451 U.S. at 172; see England v. Reinauer Transp. Cos., L.P., 194 F.3d 265, 272 (1st Cir. 1999) (vessel's customary duty to inspect mooring lines forms part of the duty to intervene).

Plaintiffs argue Defendant had a customary duty to install an escape ladder by the time the hold had been cleared. Defendant contends that OSHA longshoring regulations imposed on DRS, and not Defendant, a duty to provide a ladder. Defendant misinterprets the regulation and the apposite caselaw. The regulations do not impose on DRS a duty to provide a ladder, and a

jury may find Defendant had an independent, customary duty to provide one. See England, 194 F.3d at 271 (jury determines existence of a customary duty).

*1. Regulatory Text*

The OSHA longshoring regulation to which Defendant refers provides: "There shall be at least one safe and accessible ladder for each gang working in a single hatch. . . . Where portable straight ladders are used, they shall be of sufficient length to extend three feet (.91 m) above the upper landing surface, and be positively secured or held against shifting or slipping." 29 C.F.R. § 1918.24(a), (c). The subpart governing "gangways and other means of access" provides that a stevedoring employer "shall not permit employees to board or leave any vessel . . . until all of the applicable requirements of this subpart have been met." Id. § 1918.21.

Under a plain-language interpretation, DRS must comply with its statutory duty to provide a "reasonably safe" workplace by preventing its longshoremen from boarding vessels not in compliance with the "gangways and other means of access" subpart. 33 U.S.C. § 941(a). Accordingly, 29 C.F.R. § 1918.24 does not affirmatively impose on a stevedore a duty to provide ladders aboard a vessel. The regulation is thus consistent with any customary duty on the vessel's part to provide a ladder during cargo operations.

Defendant's reliance on caselaw interpreting a different subpart of the longshoring regulations is thus misplaced. See Foley v. Nat'l Navigation Co., Civ. No. 07-1002, 2009 WL 2145433, at *6 (E.D. Pa. July 14, 2009) (holding vessel had no duty to longshoremen to provide illumination). The OSHA regulation addressed in Foley did not contain the prefatory language that controls here. Compare 29 C.F.R. § 1918.21 with 29 C.F.R. § 1918.90 *et seq.*

2. *Scindia*

Defendant looks to the following passage from Scindia to support its reading of the LHWCA and OSHA's longshoring regulations: "As a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards. . . . [The 1972 Amendments to the LHWCA] did not otherwise disturb the contractual undertaking of the stevedore nor the rightful expectation of the vessel that the stevedore would perform his task properly without supervision by the ship." Scindia, 451 U.S. at 170 (citing 33 U.S.C. § 941). A close reading shows that Defendant misinterprets Scindia.

Although the Supreme Court recognizes that the LHWCA affirmatively imposes on a stevedore (and not a vessel) the duty to provide longshoremen a "reasonably safe" workplace, 33 U.S.C. § 941(a), the Court declined to foreclose the existence of a vessel's non-statutory duties respecting longshoremen's safety. Shortly after the quoted passage, the Court writes: "The ship is not the common employer of the longshoremen and owes no . . . *statutory* duty to them [to provide a reasonably safe workplace]." Scindia, 451 U.S. at 170 (emphasis added); see also England, 194 F.3d at 272 ("[T]he limited scope of the custom established in this case . . . does not in any way contravene the overarching principle enunciated in Scindia Steam that vessel owners are not responsible for generally overseeing cargo operations."). The LHWCA thus does not relieve a vessel of its general duties of care or customary duties, even if satisfying such duties happens to make a longshoreman's workplace safer.

## IV. CONCLUSION

For the reasons stated, I find Plaintiffs have produced evidence sufficient for a jury to conclude that Defendant breached its active operations duty and its duty to intervene, and that it owed a duty to Dobbins and the other longshoremen to provide an escape ladder in the course of cargo operations. Accordingly, I will deny Defendant's Motion for Summary Judgment.

**AND NOW,** this 9th day of February, 2012, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment *(Doc. No. 45)* is **DENIED.**

**IT IS SO ORDERED.**

**Paul S. Diamond, J.**